OPINION Raum, Judge: Section 275(a) of the 1939 Code states that “except as provided” in section 276 income taxes must be assessed within 3 years after the return was filed. Accordingly, the deficiency notices herein, dated November 25, 1957, were untimely unless the 1945 returns in question were “false or fraudulent * * * with intent to evade tax” within section 276(a).[1] The question is one of fact, but it is well settled that the burden is upon the Government to prove fraud by clear and convincing evidence. However, since fraud depends upon a mental state it is rarely provable by direct evidence, and may be established by sufficiently satisfying indirect or circumstantial evidence. We think that the requisite fraud has been proved here in Donald’s case. Although the record shows that Donald was a busy wartime doctor, he was nevertheless an alert and perceptive person. All of the income in question was derived from his practice of medicine, and he and Georgia filed a timely joint declaration of estimated income tax for 1945 showing an estimated tax of $24,000. Donald handled all tax matters for himself and Georgia, whose participation appears to have been limited to signing the declaration and her own returns. All tax payments were made by check drawn upon their joint checking-account, and only Donald signed checks at his office in excess of $500. However, no payment whatever was made upon the $24,000 estimated 1945 tax, either at the time the declaration was filed or in response to the routine quarterly notices of installments due or in any other manner at any other time. Yet, when Donald signed his return for 1945 in the following year, reporting his one-half of the community income and showing a tax in the amount of $12,773.67, he claimed a credit of $12,000 against that tax based upon his one-half of the $24,000 estimated tax on the joint declaration which in fact had not been paid. It is incredible to us that this was merely an oversight or carelessness. Here was a man with net earnings of $62,994.96 from the practice of medicine ($83,547.26 receipts minus $20,552.30 business deductions), in effect making a representation on his return that $24,000 in estimated tax in respect of those earnings had been paid in behalf of himself and his wife. We find it utterly beyond belief that he thought that the $24,000 had been paid. Its very magnitude in relation to his earnings, and the magnitude of the checks required to discharge that obligation in relation to other checks drawn by petitioner repels the notion that Donald was unaware of the nonpayment of the estimated tax. The evidence shows that the accountant, Field, prepared the returns for Donald and Georgia, and a substantial portion of testimony before us related to Field’s possible sources of information for the representation on the returns that the estimated tax had been paid. And although the matter was not conclusively resolved, the evidence is strong indeed that Donald was the source. Counsel’s suggestion that the bookkeeper may have been the source is unacceptable. While the record shows that Field may have obtained some information from the bookkeeper in preparing the returns, it is entirely unreasonable to assume that she told him that $24,000 had been paid in respect of the joint declaration. Since Donald’s records were maintained by the bookkeeper on the cash basis there were plainly no entries by her showing any such payment, and it is incredible that she would have given Field any such misinformation. But regardless of where Field got his facts, Donald could have rectified such a flagrantly erroneous statement when he signed his return. The evidence shows that he examined it prior to signing, and we do not accept as worthy of belief any representation that he was unaware of the nonpayment of the estimated tax when he signed the return. Nor is the matter to be beclouded by the evidence showing that Donald was visited several times by revenue officers in 1945 and that he made various payments of taxes to them. The fact is that Donald and Georgia were delinquent in paying taxes for years prior to 1945, and that these payments were made against their liabilities for such prior taxes. Whether such payments be considered individually or in the aggregate, the amounts were wholly unrelated to the $24,000 estimated tax for 1945, and we find it unreasonable to conclude that Donald could in any way have confused those payments with his obligations in respect of the 1945 declaration of estimated tax. The argument based upon those payments is but another example of the familiar red herring. Donald’s readiness to pervert the truth is further confirmed, if any confirmation be thought necessary, by his sworn verification of the original and amended petitions submitted to this Court as recently as November 1962 in which the flat representation was made that he paid the amount of each installment of the estimated tax on or before the due date thereof. This cannot be brushed aside as mere lawyer’s jargon. It was a serious and solemn representation that the estimated tax had been paid when in fact it had not been paid, and when, as late as November 1962, Donald surely knew it had not been paid. We have found as a fact that Donald’s 1945 return was false and fraudulent with intent to evade tax. The deficiency notice as to him was therefore timely. The matter of fraud in respect of Georgia’s return presents an entirely different problem. The record affirmatively shows that Georgia had very little to do with her return apart from signing it and strongly suggests that she knew very little about its contents. The Government’s effort to pin fraud upon her personally is based upon the contention that since all checks for taxes were drawn upon the joint account of the Corbetts, she must have known that the estimated tax bad not been paid. However, there is no indication that she in anyway examined the return before signing it, that she in fact was aware of its contents, or that she was sufficiently familiar with the joint checking account to know what checks her husband had drawn against it. We think that to the extent that fraud must be proved against Georgia the Government has failed to carry its burden and we have therefore not made any finding in its favor in respect thereof. In the circumstances, the deficiency notice against her was untimely. To be sure, we could find fraud on the part of Donald in respect of her return. Both returns reported Donald’s earnings from the practice of medicine, and it was he who handled both returns together. The same fraud that we found in relation to his return is equally applicable to her return. Thus, since he was acting in her behalf there might be room for an argument that the principal is chargeable with the fraud of the agent. Cf. Botwinik Brothers of Mass., Inc., 39 T.C. 988; but cf. Harold B. Franklin, 34 B.T.A. 927, 942; Estate of Helene Simmons, 26 T.C. 409; Estate of Howard T. Roe, 36 T.C. 939. Such an argument might be particularly appealing here where Donald is Georgia’s sole devisee and legatee and would thus be the sole beneficiary of his own fraud, contrary to the familiar principle that a wrongdoer will not be permitted to profit by his own wrong. However, no such issue was presented to us, it being assumed by the Government that it was essential to prove Georgia’s personal fraud. In this it has failed. Decisions will he entered in accordance with the foregoing opinion. SEC. 276(a). False Return or no Return. — In the case of a false or fraudulent return with Intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.