STELLA CRANE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crane v. Commissioner
Docket No. 14336-79.
United States Tax Court
T.C. Memo 1982-350; 1982 Tax Ct. Memo LEXIS 392; 44 T.C.M. (CCH) 213; T.C.M. (RIA) 82350; June 22, 1982. Norman H. McNeil, for the petitioner. David P. Fuller, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Addition to Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1972
$1,783.32
$39.55
$89.17
1973
1,819.50
454.87
90.97
$58.23
1974
2,572.58
643.14
128.63
82.32
The issues for decision are as follows: 1. Whether petitioner is liable for Federal income tax on one-half of the wages her husband earned during 1972, 1973, and 1974; 2. Whether petitioner's failure to file income tax returns for 1972, 1973 and 1974 reporting her community share of her husband's wages was due to reasonable cause within the meaning of section 6651(a)(1); [1]
3. Whether petitioner's underpayments of tax for 1972, 1973, and 1974 were due to negligence or intentional disregard of *394 rules and regulations within the meaning of section 6653(a); and 4. Whether petitioner is liable for the addition to tax for underpayment of estimated tax for 1973 and 1974 under section 6654. During 1972, 1973, and 1974, petitioner and her husband, Donald M. Crane (hereinafter Mr. Crane), now deceased, lived in Fountain Valley, California. Petitioner resided at the same address when she filed her petition. During the years in question, petitioner was a housewife and was not employed outside the home. Mr. Crane was employed by K.R.K., Incorporated (K.R.K.), in Downey, California, and received wages in the following amounts: 1972
$25,596.42
1973
$24,728.31
1974
$28,486.48
The deficiencies were determined on the ground that petitioner and Mr. Crane were domiciled in California, and under that State's community property laws, one-half of Mr. Crane's earnings were owned by petitioner and are taxable to her. For several years prior to his death, Mr. Crane was a tax protestor, and neither he nor petitioner filed income tax returns. For 1972, K.R.K. withheld Federal income taxes from Mr. Crane's wages in the amount of $3,250.20; the notice of deficiency *395 determining that petitioner is taxable on one-half of Mr. Crane's wages, states that: "In the final determination of this case, you will be given credit for withholding in the amount of $1,625.10." For both 1973 and 1974, Mr. Crane filed Forms W-4E with K.R.K. certifying that he had no Federal income tax liability for the preceding year and would incur no liability for the year for which the form was filed. K.R.K. withheld no Federal income taxes from Mr. Crane's wages for either of those years. Mr. Crane was convicted of willful failure to file returns (sec. 7203) for 1972, 1973, and 1974. Following a long illness, he died of cancer sometime after July 11, 1978. Respondent's determination that petitioner is taxable upon one-half of Mr. Crane's K.R.K. wages is, as noted above, based on the community property laws of California. Petitioner's liability for tax on income earned by her husband depends on the State law definition of income ownership. [2] Under California law, Mr. Crane's earnings from K.R.K. were community property. Cal. Civ. Code secs. 164 and 5110 (West 1970). Each spouse thus owned a vested one-half interest in, and is taxable on, the community *396 income. United States v. Malcolm,282 U.S. 792 (1931), involving California law and citing for this conclusion Poe v. Seaborn,282 U.S. 101 (1930) (Washington law), Goodell v. Koch,282 U.S. 118 (1930) (Arizona law), and Hopkins v. Bacon,282 U.S. 122 (1930) (Texas law); Cavanagh v. Commissioner,42 B.T.A. 1037, 1043-1044 (1940), affd. 125 F.2d 366 (9th Cir. 1942).We have, therefore, no alternative but to sustain the deficiency determination. Petitioner on brief contends that she and Mr. Crane made an antenuptial agreement when they were married in the Union of South Africa in 1948 to the effect that their respective earnings would be separate property. The trial record, however, does not establish the terms of such an agreement. A copy of their marriage register indicates only that an antenuptial *397 contract was made. The record does include a document apparently signed by Mr. Crane as a protest against the imposition of tax liability on petitioner; that document recites that an essential ingredient of the antenuptial contract was that he and petitioner would each be responsible for their own debts. The statement does not refer to earnings. Since the tax deficiency depends upon petitioner's ownership of the earnings, the document's statements concerning debts, even assuming they are true, can have no effect on her ownership of, and her consequent liability for tax on, the earned income. There is no evidence to show that Mr. Crane and petitioner fully, or even partially, carried out an agreement that his wages would belong to him only. See, e.g., In re Wahlefeld's Estate,105 Cal. App. 770, 288 P. 870, 873 (1930). Indeed, the implications of petitioner's testimony regarding her husband's refusal to disclose to her the amount of his earnings in order to prevent her from filing an income tax return for her community share of the income are inconsistent with the existence of an antenuptial agreement that his earnings would be his separate property. By no stretch *398 would the record support a finding that petitioner and Mr. Crane entered into an agreement in 1948 that Mr. Crane's earnings would not be community income. We are aware of the hardship cast upon petitioner by her liability for these taxes at this time. [3] It is only fair to say, however, that the trauma created by this burden is the direct result of Mr. Crane's defiance of the revenue laws. He paid his debt to society for his lawlessness as a result of his conviction for violation of the revenue laws, but the unfortunate consequences of his refusal to abide by the law survive him. Mr. Crane's conscious decision to violate the revenue laws was thus not only a personal choice for which he risked bearing the law's penalty; it represented as well his choice to risk subjecting his widow to financial hardship, despite the lack of evidence that she participated in his tax protestor activities. We recognize that petitioner feels that, in those circumstances, it is unjust for her, a widow, to be found liable for the unpaid taxes on income earned by her husband long prior to his death, but we have no authority to ignore the law in order to grant her relief. [4]
*399 There remains the issue as to petitioner's liability for the additions to tax under sections 6654, 6651(a)(1), and 6653(a). Section 6654 [5] provides for an addition to tax in the case of the underpayment of estimated tax; that section, subject to specific, limited exceptions not here applicable, is mandatory, and extenuating circumstances are irrelevant. Estate of Roe v. Commissioner,36 T.C. 939, 952 (1961); Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). We must, therefore, sustain this addition to tax. Section 6651(a)(1) [6] imposes an addition to tax if a return is not filed on the date prescribed therefor, unless the delinquency in filing is due to "reasonable *400 cause and not due to willful neglect." Section 6653(a)(1) [7] calls for the imposition of an addition to tax if any part of an underpayment is due to "negligence or intentional disregard of rules and regulations." *401 In a community property State, such as California, in a case in which a joint return is not filed, each spouse's negligence or lack of reasonable cause for his or her action or inaction must be determined separately. See Lockwood v. Commissioner,435 F.2d 1308 (9th Cir. 1971), affg. per curiam and modifying on other grounds a Memorandum Opinion of this Court. In the peculiar circumstances of this case, we do not think petitioner can properly be charged with "negligence or intentional disregard of rules and regulations" or with lack of "reasonable cause" in failing to file timely returns.The realities were that her husband, who earned the money and made the decisions for the family, was an active tax protestor. The record indicates that he continued his barrage of protests even after he was criminally prosecuted in 1976.
After he became a tax protestor, Mr. Crane refused to tell petitioner how much he earned. The first time she knew how much he earned was at her husband's criminal trial when the figures were placed in evidence. Even when "he was dying," petitioner was unable to find "any evidence in his papers" as to the amount of Mr. Crane's income. He convinced *402 her that, because the return form would require her to swear to its correctness under the penalties of perjury, she could not fill out and file a return showing her community one-half of his earnings. Respondent showed that petitioner endorsed, for deposit, some of Mr. Crane's salary checks. He argues that she could, therefore, have filed separate returns based on estimates of her share of the community income.On this ground, respondent contends that petitioner did not have reasonable cause for failure to file a return and that she intentionally disregarded the tax rules and regulations. Respondent's technical arguments would have weight in the ordinary case, but we do not think they reflect the realities of the circumstances in which petitioner lived. Accordingly, the determined deficiencies and section 6654 additions to tax will be sustained; however, petitioner has shown that she is not liable for the section 6651(a)(1) and section 6653(a)(1) additions to tax. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. In United States v. Mitchell,403 U.S. 190, 197 (1971), the Supreme Court quoted from Burnet v. Harmel,287 U.S. 103, 110↩ (1932), as follows: "The state law creates legal interests but the federal statute determines when and how they should be taxed."
3. In United States v. Mitchell,supra at 205, holding a wife in a community property State taxable on one-half of her husband's earnings even though they were separated, the Supreme Court commented on the hardships created in the case of abandoned wives in community property States as follows: It must be conceded that these cases are "hard" cases and exceedingly unfortunate for the two women taxpayers. Mrs. Mitchell loses the benefit of her inheritance from her mother, an inheritance that ripened after the dissolution of her marriage. Mrs. Angello loses her beneficiary interest in her deceased husband's life insurance policy. This takes place with each wife not really aware of the community tax situation, and not really in a position to ascertain the details of the community income.The law, however, is clear. The taxes were due. They were not paid. Returns were not even filed. The "fault," if fault there be, lies with the four taxpayers and flows from the settled principles of the community property system. If the wives were to prevail here, they would have the best of both worlds. [Fn. ref. omitted.] ↩
4. Petitioner represented to the Court that Mr. Crane's last illness, from cancer, which lasted for at least 18 months, consumed the family's savings. Respondent's counsel agreed to provide her with guidance as to the Internal Revenue Service procedures for compromising her liability on the basis of her ability to pay it.↩
5. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax.--In the case of any underpayment of estimated tax by an individual, * * * there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at an annual rate established under section 6621 upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).↩
6. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; ↩
7. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes.-- (1) In General.--If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩