C. B. WILCOX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46371.   Promulgated January 31, 1933.

*Sigmond Sanger, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The respondent proposed for assessment a deficiency in the petitioner's income tax for the year 1924 amounting to $8,032.78, together with a penalty of 5 per cent thereof for negligence in understating the tax. The deficiency and penalty are in controversy in this proceeding.

The issue is whether or not the sum of $50,000 delivered to the petitioner during the taxable year was a gift and, therefore, not taxable income.

In the year 1924 the petitioner was, and for many years previous thereto had been, vice president and in charge of operations of The Sandusky Gas & Electric Company. He had been employed originally by the company at a salary of $25 a month, which amount was gradually increased until at the beginning of 1924 his salary amounted to $6,600 per year. Early in 1924 it was increased to $7,200 per year.

The Sandusky Gas & Electric Company was an Ohio corporation with its principal place of business in the City of Sandusky. The petitioner owned one qualifying share of the company's stock, but

otherwise was not a stockholder. All of the common stock of The Sandusky Gas & Electric Company was owned by The General Gas & Electric Company, a holding company, with headquarters in New York City. W. S. Barstow was the president of The General Gas & Electric Company and his office was in the City of New York. The General Gas & Electric Company, the holding company, also owned the capital stock of The Port Clinton Light & Power Company and of The Northwestern Ohio Railway & Power Company.

Barstow, the president of The General Gas & Electric Company, and his wife were intimate friends of the petitioner and his wife.

R. V. Mitchell & Company were dealers in investment securities. Some years prior to 1924 the petitioner advised Barstow that, if The General Gas & Electric Company desired to sell its stockholdings in The Sandusky Gas & Electric Company, he, the petitioner, would like to give R. V. Mitchell & Company an opportunity to purchase them. Barstow replied to the effect that The General Gas & Electric Company had no intention of selling its holdings in The Sandusky Gas & Electric Company, but that if The General Gas & Electric Company should ever have such an intention he would give the petitioner a chance to negotiate. Nothing was done pursuant to this conversation by the petitioner or by Barstow or by The General Gas & Electric Company.

In the year 1924 The General Gas & Electric Company sold to the Cities Service Company its entire holdings of stock of The Sandusky Gas & Electric Company, The Port Clinton Light & Power Company and The Northwestern Ohio Railway & Power Company. The Cities Service Company subsequently caused The Sandusky Gas & Electric Company to transfer its properties to The Ohio Public Service Company, an Ohio corporation, which is the present operating company. A substantial part of The Sandusky Gas & Electric Company's organization, including the petitioner, was retained by The Ohio Public Service Company, and the petitioner became one of the last named company's vice presidents and in charge of the Sandusky properties.

The petitioner had no part in the negotiations resulting in the sale of the stock of The Sandusky Gas & Electric Company and of the other two corporations to The Cities Service Company. He owned none of the stock of The Port Clinton Light & Power Company or of The Northwestern Ohio Railway & Power Company, nor was he an officer of or employed by either of them.

At or about the date of the consummation of the transaction between The General Gas & Electric Company and The Cities Service Company, hereinbefore set forth, Barstow informed the petitioner that The General Gas & Electric Company had an opportunity to sell

its holdings in The Sandusky Gas & Electric Company and that the sale, if made, would include The General Gas & Electric Company's holdings in The Northwestern Ohio Railway & Power Company and in The Port Clinton Light & Power Company. The stock of The Northwestern Ohio Railway & Power Company had not been a profitable investment and Barstow advised the petitioner that The General Gas & Electric Company desired to sell the stock of The Northwestern Ohio Railway & Power Company and of The Port Clinton Light & Power Company, but that this was impossible of accomplishment unless its stockholdings in The Sandusky Gas & Electric Company were at the same time sold by The General Gas & Electric Company to the proposed purchaser. Barstow thereupon requested the petitioner to release him, Barstow, from his promise made some years before during their conversation relating to the possibility of a sale of that stock to R. V. Mitchell & Company. The petitioner, therefore, released Barstow from the promise.

After the consummation of the sale by The General Gas & Electric Company to The Cities Service Company, Barstow handed petitioner The General Gas & Electric Company's check for $50,000, stating that it was a gift for friendship's sake and that the amount of the check had been added to the price paid by the purchaser of the stock. The payment of this $50,000 was authorized by the directors of The General Gas & Electric Company by the following resolution:

The President also reported to the Board that some years ago Major C. B. Wilcox had discussed with him the matter of the sale of the stocks and bonds of The Northwestern Ohio Railway & Power Company and the stock of The Sandusky Gas & Electric Company and of The Port Clinton Electric Light & Power Company and had asked permission to negotiate with that end in view; that Major Wilcox had been informed that no sale was at that time contemplated but that if it were subsequently decided to sell the property he would be given prior consideration in the matter. The President further stated that under existing circumstances it had been impossible to have the negotiations by Major Wilcox but that, in his opinion, Major Wilcox was entitled to compensation as if he had been instrumental in making the sale and recommended that the sum of Fifty Thousand Dollars ($50,000.00) be paid to him out of the proceeds of sale.

\* \* \* \* \* \* \*

Now, Therefore, Be It Resolved, that as compensation to Major Wilcox under the arrangement above referred to there be paid to him the sum of Fifty Thousand Dollars ($50,000.00), and the Treasurer is hereby authorized and directed to make payment thereof.

The petitioner had no knowledge of the foregoing resolution until some time in the year 1928, when he was informed of it in response to a letter written by him to Barstow.

The petitioner did not report the sum of $50,000, herein referred to, as a part of his income for the year 1924 and the sum was added to such income by the respondent.

The petitioner contends that the $50,000 in question was a gift and therefore not taxable income as determined by the respondent.

A gift is a valid transfer of property from one to another without consideration or compensation therefor. *Noel* v. *Parrott*, 15 Fed. (2d) 669; *Cora B. Beatty, Executrix*, 7 B. T. A. 726; *Willis L. Garey*, 16 B. T. A. 274. To constitute a gift there must be an intention on the part of the donor to make a gift, as well as the transfer of possession and acceptance by the donee of the thing given. See *Chauncey L. Landon*, 16 B. T. A. 907, and cases cited therein.

The alleged donor is The General Gas & Electric Company, not the individual, Barstow, its president. The only direct evidence in this proceeding having any relation to the intention of The General Gas & Electric Company to make a gift to the petitioner of the amount in controversy is the testimony of the petitioner himself, and his testimony is merely to the effect that the president of that corporation and the petitioner were intimate friends and that the gift was made because of such friendship. It is difficult to conceive that a corporation would pay $50,000 of its funds to anyone under the relations here present, except in return for a valuable consideration passing to it. Moreover, it does not appear that Barstow, its president, had such a stockholding control of The General Gas & Electric Company as to be able to induce or compel its board of directors to make gifts to his personal friends. In *Noel* v. *Parrott*, *supra*, the court said:

> It needs neither argument nor citation of authority to establish the proposition that the directors were without authority to give away the corporate assets, and that for them to make to several of their members and other persons a gift of a large sum of money from the corporate assets would be neither " wise " nor " proper," and would amount to an illegal misapplication of corporate funds. We must assume that the directors did not intend such a flagrant violation of their trust.

The petitioner contends, however, that the evidence proves that the $50,000 in question was added to the purchase price paid to The General Gas & Electric Company by The Cities Service Company for the stock sold to the latter corporation by the former. Even were this a fact, and it is not adequately established, it is our opinion that the sum was a part of the assets of The General Gas & Electric Company, since, according to the testimony, it was to be paid to that company as a part of the purchase price of the stock sold.

The court also said in *Noel* v. *Parrott*, *supra:*

> Although it is held that the motive accompanying a gift is not material, gifts usually proceed from the generosity of the giver; and, when there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance for consideration. It is an essential characteristic of a gift, however, that it be a transfer without consideration.

The resolution of the board of directors of The General Gas & Electric Company, hereinbefore quoted, casts further doubt on the nature of the transaction in question. The petitioner testified that the statement contained in the preamble of the resolution, to the effect that some years before the sale he had discussed with Barstow the sale of The Northwestern Ohio Railway & Power Company and of The Port Clinton Light & Power Company, was incorrect and that as a matter of fact at the time referred to he had discussed with Barstow only the sale of The Sandusky Gas & Electric Company. Nevertheless, the preamble to the resolution quotes Barstow as stating that, in his opinion, the petitioner " was entitled to compensation" and the resolution itself authorizes payment of $50,000 to the petitioner " as compensation." It is apparent also from the allegations of the petition and from statements contained in a protest filed with the respondent by the petitioner and offered in evidence at the hearing, that both Barstow and the petitioner considered that the former had made a valid promise to the petitioner with respect to the negotiations of a sale of the stock of The Sandusky Gas & Electric Company. It is apparent also that Barstow conceived that petitioner possibly possessed some right of action, the existence of which might obstruct a consummation of a profitable sale of such stock and of the stock of the other two companies mentioned in the quoted resolution. The petitioner released Barstow from this promise and it is conceivable, therefore, that The General Gas & Electric Company regarded the release from the promise as of so great value that it paid the $50,000 as consideration for such release. In any event, the evidence is of such a character that it does not prove to our satisfaction that the $50,000 was a gift made to the petitioner by The General Gas & Electric Company. The petitioner has, therefore, failed to prove that the respondent erred in determining that the sum in question was taxable income for the year 1924.

The penalty of 5 per cent of the amount of the deficiency was proposed for assessment by the respondent on the ground that the petitioner was negligent in understating the amount of his income. Section 275 (a) of the Revenue Act of 1924 provides, in effect, among other things, for the assessment of such a penalty if any part of a deficiency in tax is due to negligence. In our opinion the evidence shows that the petitioner's failure to report the $50,000 in question as a part of his income for the year 1924 was due to an honest mistake of opinion as to its character. Therefore, there was no negligence on his part and the penalty in question should not be assessed.

*Decision will be entered under Rule 50.*