HARRY A. NELSON, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nelson v. Commissioner
Docket Nos. 1951-66, 5998-69.
United States Tax Court
T.C. Memo 1974-239; 1974 Tax Ct. Memo LEXIS 80; 33 T.C.M. (CCH) 1057; T.C.M. (RIA) 74239; September 17, 1974, Filed. Harry A. Nelson, pro se. W. John Howard, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Docket No. 1951-66
Additions to the Tax
Sec. 291(a)*
Sec. 293(a)*
Sec.294(d)(1)(A)* Year
Deficiency
Sec. 6651(a)**
Sec. 6653(a)**
Sec. 6654**
1951
$3,655.51
$ 913.88
$182.78
$ 219.33
1952
1,761.16
440.29
88.06
105.67
1953
692.00
173.00
34.60
41.52
1954
913. 23
228.31
45.66
63.93
1955
772.23
193.06
38.61
6.94
1956
4,843.38
1,210.85
242.17
47.17
1958
508.32
127.08 25.42
4.24
1959
1,141.96
285.49
57.10
10.10
1960
1,259.93
314.98
63.00
10.44
1961
490.14
122.54
24.51
4.45
1962
3,559.01
889.75
177.95
33.33
1963
5,932.41
1,483.10
296.62
56.73
Docket No. 5998-69
Additions to the Tax
Year
Deficiency
Sec. 6651(a)**
Sec. 6653(a)**
Sec. 6654**
1964
$4,701.05
$1,175.26
$235.05
$ 117.38
1965
323.73
80.93
16.19
-0-
1966
3,207.73
801.93
160.39
28.02
1967
2,663.09
665.77
133.15
26.63
1968
3,334.00
833.50
166.70
33.34
*82 The issues for decision are: (1) Whether petitioner failed to report taxable income for the years 1951-1956, 1958-1964 and 1966-1968, and whether he understated his taxable income for 1965. (2) Whether petitioner is entitled to a deduction for the cost of commemorative U.S. postage stamps which he purchased and saved during the years in issue. (3) Whether petitioner is liable for additions to tax in any of the years in issue: (a) Under sections 291(a), Internal Revenue Code of 1939, and 6651(a), Internal Revenue Code of 1954, for failing to file timely Federal income tax returns. (b) Under sections 293(a), Internal Revenue Code of 1939, and 6653(a), Internal Revenue Code of 1954, for negligence or intentional disregard of rules or regulations with respect to income taxes. (c) Under sections 294(d) (1) (A), Internal Revenue Code of 1939, and 6654, Internal Revenue Code of 1954, for failing to pay estimated income taxes. FINDINGS OF FACT Most of the facts have been stipulated [1] by the parties and are found accordingly. *83 Harry A. Nelson (herein called petitioner) is a single person whose legal residence was in Miami, Texas, when he filed his petitions in these proceedings. He was born on November 24, 1888, in Buchanan County, Missouri. He did not file Federal income tax returns for 1951-1964 and 1966-1968. In June 1969, he mailed a Federal income tax return for 1965 to the Social Security Administration with a remittance of $98 as shown on that return. Petitioner's principal occupation is farming and raising livestock. During all of the years in issue he operated a 640 acre farm in Gray County, Texas. During the years 1960-1968, he operated a 480 acre farm near St. Joseph, Missouri. He also owns another 380 acres in Gray County, Texas, which he has rented to his son-in-law, Lloyd R. Harvey, since 1942. During the years in issue petitioner maintained *84 a checking account in his name at First State Bank, Mobeetie, Texas. During 1951 deposits totaling $35,833.98 were made to this account, as follows: Taxable sources
Amount Grain, agricultural payments
$ 297.20
Livestock sales
5,581.85
Miscellaneous income
236.04
Oil & gas bonus
16,000.00
Seismograph damages 150.00
Total, taxable sources
$22,265.09
Non-taxable sources
Amount
Loans
$ 750.00
Miscellaneous
41.00
Inheritance
804.29
Death gratuities (son killed in Korea) 11,973.60
Total, non-taxable sources $13,568.89
Total deposits $35,833.98
Petitioner is entitled to a deduction for business expenses of $9,846.90 for 1951. [2]
During 1952 deposits totaling $34,018.49 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$18,537.96
Livestock sales
1,142.49
Miscellaneous income
311.42
Rent
85.00
Delay rentals (oil and gas)
640.00
Seismograph damages 50.00
Total, taxable sources
$20,766.87
Non-taxable sources
Loans
$11,950.00
Inheritance
516.21
Miscellaneous
136.41
Death gratuity (son killed in Korea)
150.00
Repayment of loan 499.00
Total, non-taxable sources 13,251.62
Total deposits $34,018.49
*85 Petitioner is entitled to deductible business expenses of $12,800.71 for 1952. During 1953 deposits totaling $16,379.10 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$1,400.53
Livestock sales
8,485.48
Miscellaneous income
45.24
Rent
50.00
Delay rentals (oil and gas) 960.00
Total, taxable sources
$10,941.25
Non-taxable sources
Loans
$4,300.00
Inheritance
176.95
Miscellaneous
40.90
Death gratuity (son killed in Korea)
270.00
Repayment of loan 650.00
Total, non-taxable sources 5,437.85
Total deposits $16,379.10
Petitioner is entitled to deductible business expenses of $11,632.83 for 1953. During 1954 deposits totaling $35,523.04 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$ 8,131.27
Livestock sales
5,267.23
Miscellaneous income
438.54
Delay rentals (oil and gas) 960.00
Total, taxable sources
$14,797.04
Non-taxable sources
Amount
Loans
$15,500.00
Inheritance
160.00
Insurance recovery (automobile accident) 5,066.00
Total, non-taxable sources $20,726.00
Total deposits $35,523.04
*86 Petitioner had deductible business expenses of $12,288.71 in 1954. Deposits totaling $18,512.02 were made to petitioner's State Bank account during 1955, as follows: Taxable sources
Amount Grain, agricultural payments
$ 2,785.87
Livestock sales
6,767.95
Miscellaneous income
445.33
Delay rentals (oil and gas)
960.00
Seismograph damages 200.00
Total, taxable sources
$11,159.15
Non-taxable sources
Loans
$ 6,950.00
Miscellaneous 402.87
Total, non-taxable sources $7,352.87
Total deposits $18,512.02
Petitioner is entitled to deductible business expenses of $9,313.80 for 1955. During 1956 deposits totaling $26,472 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$ 3,826.14
Cattle sales
10,312.86
Seismograph damages
300.00
Rent
120.00
Oil and gas bonus
8,000.00
Sale of section 1231 assets 510.00
Total, taxable sources
$23,069.00
Non-taxable sources Loans
$3,200.00
Miscellaneous non-taxable income 203.00
Total, non-taxable sources 3,403.00
Total deposits $26,472.00
Petitioner is entitled to deductible business expenses of $7,455.42 *87 for 1956. This includes $500 representing the cost of livestock sold. During 1957 deposits totaling $14,489.88 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$ 2,358.93
Cattle sales
1,251.35
Pasture rent
288.50
Miscellaneous farm income
21.10
Seismograph damage
200.00
Delay rentals (oil and gas)
320.00
Rent
60.00
Sale of section 1231 asset 350.00
Total, taxable sources
$4,849.88
Non-taxable sources
Amount
Miscellaneous non-taxable income
$140.00
Loans 9,500.00
Total, non-taxable sources $9,640.00
Total deposits $14,489.88
Petitioner is entitled to deductible business expenses of $8,039.92 for 1957. This figure includes $1,172.85 which represents the basis of livestock sold and $1,097.93 for redeeming C.C.C. wheat. During 1958 deposits totaling $39,301.83 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$10,972.82
Cattle sales
2,814.09
Pasture rent
273.00
Miscellaneous farm income
44.75
Delay rentals (oil and gas)
320.00
Sale of section 1231 assets 280.00
Total, taxable sources
$14,704.66
Non-taxable sources
Loans
$20,000.00
Repayment of loans
3,500.00
Pan American Ins. Co. collision loss
322.17
Miscellaneous non-taxable income 775.00
Total, non-taxable sources $24,597.17
Total deposits $39,301.83
*88 Petitioner is entitled to deductible business expenses of $10,180.44 for 1958. This includes $2,448.85 representing his basis in livestock sold. During 1959 deposits totaling $25,550.21 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$14,627.26
Cattle sales
2,066.83
Miscellaneous farm income
36.12
Delay rentals (oil and gas) 320.00
Total, taxable sources
$17,050.21
Non-taxable sources
Loans $8,500.00
Total, non-taxable sources $ 8,500.00
Total deposits $25,550.21
Petitioner is entitled to deductible business expenses of $8,448.23 for 1959. During 1960 deposits totaling $21,017.81 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$15,921.00
Cattle sales
1,170.70
Delay rentals (oil and gas)
320.00
Interest
312.80
Miscellaneous taxable income 123.00
Total, taxable sources
$17,694.50
Non-taxable sources
Non-taxable return of principal (four $500 bonds and $50 loan)
$ 1,550.00
Loans
1,750.00
Miscellaneous non-taxable income 23.31
Total, non-taxable sources $ 3,323.31
Total deposits $21,017.81
*89 Petitioner is entitled to deductible business expenses of $9,960.36 for 1960. This includes $328.50 representing the cost of two steers sold, and $2,207.69, representing redemption of C.C.C. wheat. During 1961 deposits totaling $13,391.49 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$ 8,698.17
Cattle sales
3,454.96
Miscellaneous refunds - taxable 80.39
Total, taxable sources
$12,233.52
Non-taxable sources
Miscellaneous refunds - non-taxable
37.10
Inheritance
1,095.87
Damages to 1961 Ford automobile 25.00
Total, non-taxable sources $ 1,157.97
Total deposits $13,391.49
Petitioner had deductible business expenses of $11,089.10 in 1961. During 1962 deposits totaling $36,432.61 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$24,584.06
Cattle sales
1,236.33
Egg sales
2.00
Sale of parts 340.00
Total, taxable sources
$26,162.39
Non-taxable sources
Amount
Non-taxable refunds
$ 11.05
Inheritances 10,259.17
Total, non-taxable sources $10,270.22
Total deposits $36,432.61
*90 Petitioner had deductible business expenses of $10,359.78 in 1962. During 1963 deposits totaling $47,799.26 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$20,860.42
Soy beans sales
5,095.58
Cattle sales
2,226.20
Egg sales
396.05
Rent
135.00
Oil bonus
3,196.15
Seismograph damages
100.00
Receipt from J. D. Stagner from growing crops on land purchased by petitioner in 1963 1,137.84
Total, taxable sources
$33,147.24
Non-taxable sources
Inheritances
$14,589.23
Miscellaneous - non-taxable income 62.79
Total, non-taxable sources $14,652.02
Total deposits $47,799.26
Petitioner had deductible business expenses of $12,529.18 in 1963. This includes the cost of growing crops purchased from J. D. Stagner. During 1964 deposits totaling $114,647.27 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$16,092.55
Cattle sales
2,919.37
Egg sales
1,228.43
Hotel rent
3,000.00
Other rent
932.00
Oil and gas bonus
8,000.00
Delay rental (oil and gas)
160.00
Seismograph damages
395.00
Miscellaneous taxable income 70.36
Total, taxable sources
$32,797.71
Non-taxable sources
Miscellaneous non-taxable income
$ 35.36
Inheritances
32,741.33
Loans
49,000.00
Non-taxable refunds 72.87
Total, non-taxable sources $81,849.56
Total deposits $114,647.27
*91 Petitioner had deductible business expenses of $14,055.96 for 1964.
During 1965 deposits totaling $24,940.09 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$ 2,517.88
Egg sales
39.50
Hotel rent
3,000.00
Delay rentals (oil and gas)
480.00
Taxable sources
Amount
Seismograph damages
$ 200.00
Other rent
275.00
Received from Raymond Stewart 136.11
Total, taxable sources
$6,648.49
Non-taxable sources
Non-taxable refunds
$ 41.60
Loans 18,250.00
Total, non-taxable sources $18,291.60
Total deposits $24,940.09
Petitioner had deductible business expenses of $11,380.49 during 1965. During 1966 deposits totaling $41,864.08 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$20,948.22
Livestock sales
5,013.41
Egg sales
96.65
Hotel rent
2,750.00
Other rent
525.00
Delay rentals (oil and gas)
480.00
Easement 25.00
Total, taxable sources
$29,838.28
Non-taxable sources
Non-taxable refund (insurance)
$ 25.80
Loans 12,000.00
Total, non-taxable sources $12,025.80
Total deposits $41,864.08
*92 Petitioner had deductible business expenses of $14,669.69 in 1966. During 1967 deposits totaling $41,929.90 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$20,159.24
Livestock sales
3,008.01
Egg sales
60.15
Hotel rent
3,000.00
Other rent
675.00
Delay rentals (oil and gas)
480.00
Seismograph damages
550.00
Unidentified deposits
1,496.50
Miscellaneous income 1.00
Total, taxable sources
$29,429.90
Non-taxable sources Refund of escrow by attorney
$ 1,500.00
Loans 11,000.00
Total, non-taxable sources $12,500.00
Total deposits $41,929.90
Petitioner had deductible business expenses of $16,474.74 in 1967. During 1968 deposits totaling $47,168.40 were made to petitioner's State Bank account, as follows: Taxable sources
Amount Grain, agricultural payments
$23,411.14
Livestock sales
1,986.57
Hotel rent
3,025.00
Delay rentals (oil and gas)
320.00
Seismograph damages
400.00
Unidentified deposits 2,666.69
Total, taxable sources
$31,809.40
Non-taxable sources
Amount
Loans
$15,000.00
Refund of court bond
250.00
Repayment of loan 109.00
Total, non-taxable sources $15,359.00
Total deposits $47,168.40
*93 During 1968 petitioner opened and maintained a checking account in his name at Citizens Bank & Trust Company in Pampa, Texas. During 1968 deposits totaling $29,600 were made to this account, as follows: Taxable sources
Amount Oil & gas bonus $ 9,600.00
Total, taxable sources
$9,600.00
Non-taxable sources
Loans $20,000.00
Total, non-taxable sources $20,000.00
Total deposits $29,600.00
Petitioner had deductible business expenses of $23,237.55 in 1968. In addition to these deductible business expenses, petitioner is entitled to the following depletion deductions: Year
Depletion Deduction 1951
$4,400.00
1956
2,200.00
1963
878.74
1964
2,200.00
1968
2,640.00
The following amounts, previously allowed as depletion deductions are includable in income in the years when the oil or gas leases expired without production: Year
Amount 1956
$4,400.00
1961
2,200.00
1968
847.74
Petitioner is entitled to depreciation expenses and investment credits for the years at issue, as follows: Year
Depreciation
Investment Credit 1951
$ 2,889.88
1952
4,177.06
1953
5,439.77
1954
5,181.25
1955
4,618.05
1956
4,419.27
1957
4,074.09
1958
2,965.32
1959
2,511.94
1960
2,704.68
1961
2,614.17
1962
2,780.34
$ 198.00
1963
3,958.42
273.28
1964
5,905.57
63.00
1965
6,336.82
28.00
1966
8,864.71
616.85
1967
10,016.91
976.26
1968
11,269.10 [3]
862.36 [3]
*94 Petitioner is entitled to a dependency exemption for his son, Harry A. Nelson, Jr., for 1962 thru 1968. Petitioner is an honorary member of the American Philatelic Association and is also a member of the Texas Philatelic Association. In addition, he subscribes to a stamp magazine. He began buying commemorative U.S. postage stamps in the early 1930's when a three cent stamp was issued to honor Thomas Jefferson. Financial statements submitted by petitioner to his bank in the course of securing loans valued his commemorative postage stamps as follows: Year
Value of Stamps 1957
$ 5,035.00
1960
10,000.00
1963
15,000.00
1965
16,000.00
1968
15,000.00
1970
16,000.00
OPINION 1. Determinations of taxable income. With the exception of 1965, petitioner failed to file Federal income tax returns for the years at issue. In 1969, he mailed his return to the Social Security *95 Administration, which return eventually reached respondent. The issue before us is petitioner's taxable income for the years in question. Because a taxpayer has better access to and personal knowledge of his records, respondent's determination of income tax deficiencies, as set forth in the statutory notice, is presumed to be correct, and petitioner had the burden of establishing that it is erroneous. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
We have no evidence that resondent's determination was arbitrary or capricious. All of the deposits and expenses listed in our findings of fact were stipulated by the parties. These figures were computed by reference to petitioner's check stubs for the years at issue.When stubs having no notation were found, petitioner was allowed to explain the nature of the expense and respondent accepted these explanations. This method seems neither unreasonable nor arbitrary; in fact, it appears to be the most appropriate method under the circumstances. Petitioner's basis for contending *96 that respondent's determinations are excessive is that his granddaughter, a well-qualified registered accountant, prepared returns for these years at issue in 1969. She worked on these returns at home, after work, using bank statements, cancelled checks, check stubs and deposit slips supplied by petitioner. After she returned these records to petitioner, together with the completed returns and her work papers, they were stolen from his pick-up truck and his home. She testified at trial that she had arrived at a tax liability of $500 for the years at issue. Unfortunately, with the exception of the 1965 return, these returns were never given to the Internal Revenue Service. As a result, neither they, nor this Court, had the opportunity to examine these returns for completeness and accuracy. We do not doubt the honesty of petitioner's granddaughter or her testimony, and we regret that we do not have the returns which she prepared and bank deposits, from which she took her figures, represent the best evidence of his taxable income which we have. We are satisfied on this record that our findings properly reflect petitioner's taxable income for the years involved herein. [4]
*97 2. Claimed deductions for U.S. postage stamps. Petitioner's second contention is that he is entitled to an offsetting deduction for the amount of commemorative U.S. postage stamps which he purchased during the years at issue. He argues that since his refusal to use the stamps for postage has caused the United States to profit, his expenditures should be considered a "gift" or "donation" to the Government, entitling him to a charitable deduction. Since deductions are a matter of legislative grace, petitioner has the burden of showing that his expenditures fall within a particular provision of the Internal Revenue Code. New Colonial Ice Company v. Helvering, 292 U.S. 435 (1934). Petitioner appears to acknowledge that there is no provision granting a deduction for the purchase of U.S. postage stamps which he collected. He further acknowledges that stamp collectors are not entitled to deduct the cost of their stamp purchases. Both section 23(o), Internal Revenue Code of 1939, and section 170, Internal Revenue Code of 1954, permit a deduction for *98 a charitable contribution to the United States. However, a gift requires the payment of money or the transfer of property without adequate consideration. See C. B. Wilcox, 27 B.T.A. 580, 583 (1933). Not every payment to a charitable organization qualifies as a charitable contribution. There can be no gift, even where there is an intent to make a gift, when the person making the payment receives something of equal value in return for his payment. Estate of Willis D. Wood, 39 T.C. 1, 6 (1962); Harris W. Seed, 57 T.C. 265, 275 (1971) and the cases cited therein. Petitioner recognized that he received something of equivalent value for the money which he "gave" to the Post Office. He testified that the stamps could always be used for postage, and also that they would become increasingly more valuable to collectors, due to scarcity and demand. Petitioner made no showing that the value of what he received was less than the value of his payment. The situation here is analogous to that of a taxpayer who purchases a ticket to an event sponsored by charity but fails to use it. In such a case, the charitable deduction is limited to the cost of *99 the ticket less the value of the admission or other privilege associated with the event. The fact that a taxpayer failed to use the ticket would not allow him to deduct its full cost.See Rev. Rul. 67-246, 1967-2 C.B. 104. In addition, petitioner can use his stamps for postage as long as the United States has a postal service, while the other taxpayer's ticket has no value after the event. Petitioner argues in his reply brief that his investment in stamps is similar to an investment in U.S. Savings Bonds. However, no charitable deduction is allowed for such a payment since the purchaser receives equal value. Accordingly, we hold that the petitioner is not entitled to any claimed deductions for the purchase of U.S. postage stamps during the years in issue. 3(a).Additions to tax for failing to file timely returns. As noted in our findings of fact, petitioner failed to file his Federal income tax returns for many years. Unless he can show that this failure was due to reasonable cause, he is liable for the additions to tax under sections 291(a), Internal Revenue Code of *100 1939, and 6651(a), Internal Revenue Code of 1954. During the years at issue, the petitioner lived with his daughter and son-in-law. He knew that they filed Federal income tax returns during those years. His failure to file returns was not based on the advice of his accountants, nor was his failure to file due to bad health or his advanced age. Even though petitioner was 84 years old at the time of the trial, he was alert and well aware of what was going on. In fact, he represented himself at part of the trial and did a remarkable job of examining witnesses. Although he suffered a heart attack in the early 1960's, this does not explain his failure to file returns for the earlier years or his failure to file other returns until 1969. Admittedly, petitioner had extensive business interests (farms in two different states, and a hotel in a third), but the pressures of business cannot excuse the failure to file an income tax return. See Herbert W. Dustin, 53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (C.A. 9, 1972). We think the petitioner sincerely believed that he was not required to file income tax returns because his stamp *101 purchases left him with no money. However, we have previously held that an uninformed and unsupported belief by a taxpayer, no matter how sincere, is not sufficient to constitute reasonable cause for failure to file income tax returns. Robert A. Henningsen, 26 T.C. 528, 536 (1956), affd. 243 F.2d 954 (C.A. 4, 1957). It is also clear that lack of funds due to investment in illiquid assets does not provide reasonable cause for failing to file income tax returns. See section 301.6651-1(c) (1), Proced. & Admin. Regs. The taxpayer must prove that the failure was due to reasonable cause. West Virginia Steel Corporation, 34 T.C. 851, 860 (1960). He has not done so.Accordingly, we find that the petitioner is liable for the additions to tax for failing to file timely returns without reasonable cause. [5]
3(b). Additions to tax for negligence or intentional *102 disregard of rules or regulations with respect to income tax. Respondent determined that petitioner was liable for the 5 percent additions to tax under sections 293(a), Internal Revenue Code of 1939, and section 6653(a), Internal Revenue Code of 1954, for negligence or intentional disregard of rules or regulations with respect to income tax. Petitioner is required to keep records "sufficient to establish the amount of gross income * * * required to be shown * * * (on his) return." Section 1.6001-1(a), Income Tax Regs. He kept his cancelled checks, check stubs and records of his bank deposits. For the most part the check stubs represented a proper record of business expenditures. However, a significant number contained no notation at all. While this made a determination of business expenses more difficult, we do not find that petitioner's failure to keep perfect records resulted from his negligence, considering the volume of his records, the extent of his business activities in several states, and his age. [6] Accordingly, after considering *103 and weighing all the evidence, it is our opinion that additions to the tax for negligence are not warranted for the years at issue. 3(c). Additions to tax for failure to pay estimated income taxes. We must also sustain the additions to tax under section 294(d) (1) (A) Internal Revenue Code of 1939, for failure to file a declaration of estimated tax, and section 6654, Internal Revenue Code of 1954, for failure to pay estimated income taxes. The addition under section 6654 is mandatory and is "imposed whether or not there was reasonable cause for the underpayment." Section 1.6654-1(a) (1), Income Tax Regs.; Estate of Howard T. Roe, 36 T.C. 939, 952 (1962); Estate of Barney Ruben, 33 T.C. 1071, 1072 (1960). Reasonable cause is a defense to imposition of the penalty provided by section 294(d) (1) (A), Internal Revenue Code 1939. However, we hold that petitioner *104 has not shown reasonable cause for failure to file his declarations of estimate tax for the same reasons we have previously held that he has not shown reasonable cause for not filing his income tax returns. To reflect the foregoing and the concessions made by the parties, Decisions will be entered under Rule 155. Footnotes
*. Internal Revenue Code of 1939 ** Internal Revenue Code of 1954 ↩
1. The stipulation of facts and supplemental stipulations were prepared through the diligent efforts of Thomas E. King, former counsel for the petitioner, and respondent's attorney. In most instances the stipulations are also signed by the petitioner. They include most of petitioner's taxable income and expenses for the years in issue. ↩
2. This determination of deductible expenses does not include depreciation, depletion or net operating losses. This procedure will be followed for all of the years at issue. Deductions for depletion and depreciation will be noted separately later in our findings. ↩
3. The figures for 1968 include an investment credit and additional depreciation expenses for the following equipment: ↩ Date Acquired
Asset
Years
Method
Cost 9-1-68
Irrigation Equipment
8
SL
$3,165.00
10-1-68
Peanut Equipment
6
SL
2,269.60
4. One explanation for the disparity between the deficiency which the granddaughter computed and that which we find is that she had access to records of net operating losses for years prior to those before us which we cannot consider since the returns for those years are not before us. ↩
5. The addition to tax for failure to file is not proper for those years in which petitioner had a loss independent of any carryback or carryforward, i.e., 1953, 1954, 1955, 1957 and 1965. ↩
6. See Peter Chippi, T.C. Memo 1971-236↩.