ROBERT DELLI PAOLI a/k/a ORLANDO DELLI PAOLI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; WATERBURY REALTY CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Responent
Paoli v. Commissioner
Docket Nos. 4936-82, 4937-82.
United States Tax Court
T.C. Memo 1985-196; 1985 Tax Ct. Memo LEXIS 437; 49 T.C.M. (CCH) 1292; T.C.M. (RIA) 85196; April 23, 1985. Murray Appleman, for the petitioners. Julius *438 A. Jove, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes in these consolidated cases as set forth below: Robert Delli Paoli a/k/a Orlando Delli Paoli
Docket No. 4936-82
Addition to Tax
Sec. 6651(a),
Sec. 6653(a),
Sec. 6654,
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1975
$6,020.02
$1,505.00
$301.01
$260.67
Waterbury Realty Corporation
Docket No. 4937-82
Addition to Tax
Sec. 6651(a),
Sec. 6653(a),
Sec. 6654,
Year
Deficiency
I.R.C. 1954
I.R.C. 1954
I.R.C. 1954
1975
$6,170.65
$1,542.66
$308.53
$147.95
1977
$5,276.21
$1,319.05
$263.81
After a concession by petitioner Robert Delli Paoli of one of the issues at trial, [1] the following issues remain for decision: 1. Which of the petitioners, Robert Delli Paoli or Waterbury Realty Corporation, realized and is properly taxable on gains, under section 1231, [2] as follows: (a) $28,900.35 for 1975 from the sale of rental property at 188 Brinsmade Avenue, *439 Bronx, New York; and (b) $28,545.64 for 1977 from the sale of rental property at 186 Brinsmade Avenue, Bronx, New York; 2. If we find petitioner Waterbury Realty Corporation taxable on the gain from the 1975 sale of 188 Brinsmade Avenue, whether the sale resulted in a constructive dividend to petitioner Robert Delli Paoli in the amount of $12,000; 3. Whether, for 1975, petitioner Waterbury Realty Corporation failed to report rental income in the amount of $9,220; 4. Whether, for 1977, petitioner Waterbury Realty Corporation is entitled to deduct certain business expenses disallowed by respondent; 5. Whether, for 1975, petitioner Robert Delli Paoli and petitioner Waterbury Realty Corporation are liable for additions to tax determined by respondent under section 6651(a) for failure to file a return, under section 6653(a) for an underpayment of tax due to negligence or disregard of rules and regulations, and under section 6654 for failure to pay estimated income tax; and, for 1977, whether petitioner Waterbury Realty Corporation is liable for the additions to tax under sections 6651(a) and 6653(a). *440 FINDINGS OF FACT At the time he filed his petition in this case, petitioner Robert Delli Paoli, also known as Orlando Delli Paoli (hereinafter Delli Paoli), resided at 3153 Waterbury Avenue, Bronx, New York. Petitioner Waterbury Realty Corporation (Waterbury) is a corporation organized under the laws of the State of New York, and was incorporated on December 4, 1953. On or about October 1, 1964, Delli Paoli acquired a four-family brick house at 186-188 Brinsmade Avenue, Bronx, New York (the Brinsmade property) which he used as rental property.Delli Paoli's individual Federal income tax returns show that the Brinsmade property produced rental income of $6,960 in 1971 and $9,960 in 1974. By deed dated May 6, 1975, Delli Paoli conveyed the Brinsmade property, for no consideration, to Waterbury. Delli Paoli conveyed the Brinsmade property to Waterbury on order to avoid its seizure to satisfy the claim of a potential judgment creditor, Anthony Venturo, a former business associate of Delli Paoli's, who had obtained a default judgment against Delli Paoli in the amount of $246,815.73 on July 5, 1974. The default judgment was vacated by court order of November 12, 1974; however, *441 Ventura's underlying lawsuit against Delli Paoli continued. At the time of the transfer of the Brinsmade property, Waterbury held title to Delli Paoli's residence at 3153 Waterbury Avenue. Waterbury's Federal income tax return for 1969 shows that it engaged in the business of renting real estate; on that return, Waterbury reported gross rental receipts of $3,780. After the transfer of the Brinsmade property, however, during the remainder of 1975, tenants at the Brinsmade property continued to make their rent checks payable to Delli Paoli in his individual capacity, rather than to Waterbury. From June through December 1975, Delli Paoli received rental payments from Brinsmade tenants Anthony and Marie DiGennaro in the amount of $1,665 and from Louis and Elizabeth Solimano in the amount of $802.35. Waterbury's 1969 Federal income tax return discloses that, as of September 24, 1970, the date it was signed, Delli Paoli was Waterbury's president, and that he owned 100 percent of Waterbury's stock. As of February 26, 1975, Delli Paoli was still listed as Waterbury's president on a mortgage loan application submitted by Delli Paoli and his wife to the Knickerbocker Federal Savings and *442 Loan Association. [3] Waterbury maintained a checking account, number XXX-X-XX2451, at the Throgs Neck Branch of the Chase Manhattan Bank, and employed accountants to keep financial records and prepare tax returns. Sometime between February 26, 1975 and May 22, 1975, Delli Paoli's son, Andrew Delli Paoli (Andrew), was named Waterbury's president by Delli Paoli. Waterbury's 1977 Federal income tax return, filed on or about December 8, 1978, was signed by Andrew as president. Unlike Waterbury's 1969 return, its 1977 return does not indicate Waterbury's stock ownership as of the time it was filed on or about December 8, 1978. On or about November 14, 1975, part of the Brinsmade property (the 188 Brinsmade portion) was conveyed by Waterbury to Michael Sanguiolo, Delli Paoli's son-in-law. Andrew, Waterbury's president at the time of sale, was present at the *443 closing and signed the deed. Proceeds of the sale in the amount of $47,404.55 went to Delli Paoli directly. On or about January 4, 1977, the remaining part of the Brinsmade property (the 186 Brinsmade portion) was conveyed by Waterbury to Daniel Vitiello and his wife, Rita Vitiello, for a price of $53,000.Proceeds of this sale in the amount of $48,091.82 also went to Delli Paoli directly. Neither Delli Paoli nor Waterbury filed Federal income tax returns for 1975; neither Delli Paoli nor Waterbury reported either the 1975 sale of the 188 Brinsmade portion, or the rent paid by the tenants at the Brinsmade property to Delli Paoli on any Federal income tax return. Delli Paoli also failed to report for 1975 gain in the amount of $20,863.60 realized on his sale of rental property in Miami, Florida. Delli Paoli and his wife, Josephine, filed a joint Federal income tax return for 1977 dated March 8, 1978. The only income reported on this return were wages paid to Delli Paoli by Andrea Motel Corp. in the amount of $2,680. Waterbury filed a 1977 Federal income tax return on or about December 8, 1978, reporting income consisting only of gross rental receipts of $7,800. Neither Delli *444 Paoli nor Waterbury reported the sale of the 186 Brinsmade portion on their returns for 1977. OPINION 1. Gains on the 1975 and 1977 Sales of the Brinsmade Property
In 1964, Delli Paoli acquired a four-family brick house at 186-188 Brinsmade Avenue which he used as rental property. On May 6, 1975, Delli Paoli conveyed the Brinsmade property, for no consideration, to Waterbury, his "family corporation," in order to place his asset out of the reach of a potential judgment creditor. On November 14, 1975, the 188 Brinsmade portion was sold for a gain of $28,900.35, and on January 4, 1977, the 186 Brinsmade portion was sold for a gain of $28,545.64. Neither of the two sales was ever reported on any Federal income tax return. The parties are in agreement with respect to the fact of, and the amount of gain on, each sale. They disagree, however, concerning which of the petitioners, Delli Paoli or Waterbury, is taxable on the gain. Respondent determined that Waterbury, as title holder and seller of the Brinsmade property, is taxable on the gains derived from both sales. Petitioners contend that Waterbury merely held title to the Brinsmade property, that Delli Paoli at all times *445 remained the property's beneficial owner, and that, therefore, he, not Waterbury, is taxable on gain from the sales. After careful consideration of the evidence on this issue, we conclude that Waterbury, not Delli Paoli, is taxable on the sales; we therefore sustain respondent's determination. It is well settled that, in general, a corporation is considered a separate taxable entity and may not be excused from taxation on the gain derived from its transactions. Thus, in Moline Properties v. Commissioner,319 U.S. 436, 438-439 (1943), the Supreme Court stated as follows: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is theequivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * In Burnet v. Commonwealth Improvement Co.,287 U.S. 415, *446 this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages. [Citations omitted. Fn. refs. omitted. Emphasis added.] In National Carbide Corp. v. Commissioner,336 U.S. 422, 433-434 (1949), the Supreme Court expressly called attention to the fact that it had reached its conclusion in Moline Properties despite findings of the Board of Tax Appeals that full beneficial ownership of the property there involved was in the sole stockholder; the Court said: Undoubtedly the great majority of corporations owned by sole stockholders are "dummies" in the sense that their policies and day-to-day activities are determined not as decisions of the corporation but by their owners acting individually. * * * We reversed the Board of Tax Appeals in Moline Propertiesin the face of itsfindings that "Full beneficial ownership was in Thompson [the sole stockholder, *447 ] who continued to manage and regard the property as his own individually. [Emphasis added.] See also Tomlinson v. Miles,316 F.2d 710 (5th Cir. 1963); Harrison Property Management Co., Inc. v. United States,201 Ct. Cl. 77, 83-84, 475 F.2d 623, 626 (1973); Bolger v. Commissioner,59 T.C. 760, 767, n. 4 (1973). Under these cases, a taxpayer cannot shop on both sides of the street at the same time. Evans v. Commissioner,557 F.2d 1095, 1099 (5th Cir. 1977), affg. in part and revg. in part a Memorandum Opinion of this Court. He must accept the disadvantages as well as the advantages of incorporation. The transfer of the Brinsmade property to Waterbury served Delli Paoli's advantage by providing a shield from his creditors. He cannot now avoid the disadvantage of having Waterbury pay a tax on the gain from the sale of the property. Petitioners contend that since the time of its incorporation in 1953, Waterbury never served as anything more than a mere titleholder, first of the property at 3153 Waterbury Avenue, *448 Delli Paoli's residence, and, after the transfer of the Brinsmade property, of that as well. They contend that Delli Paoli transferred bare legal title of the Brinsmade property to Waterbury, his "family corporation," only to shield the property from a potential creditor, but that Delli Paoli always intended to, and did remain, its beneficial owner. This intent is evident, they argue, because, after the transfer, Delli Paoli personally continued to collect rent from the Brinsmade tenants, and he personally received the proceeds from the sales of the property. In sum, citing Paymer v. Commissioner,150 F.2d 334 (2d Cir. 1945), affg. in part and revg. and remanding in part a Memorandum Opinion of this Court, as their only authority, petitioners argue that Waterbury was merely a dummy corporation, the only function of which was to hold title to the Waterbury Avenue and Brinsmade Avenue properties, and because it served no other business functions, it should be disregarded for tax purposes. In Paymer, two brothers, who for many years had managed real property as partners, formed two corporations, Raymep and Westrich, to which they transferred title to certain *449 real estate in order to shield it from creditors. Written minutes of a board of directors' and shareholders' meeting of both Raymep and Westrich, recorded at the time of the property transfers, stated that the corporations were to hold legal title only, but that the stockholders (the brothers) would retain the beneficial interest in, the management and control of, and all profits from the property. After the transfers, the brothers acted in respect to the properties as they always had before, i.e., managing it, collecting income, paying expenses, depositing the income in their partnership account, and using the net profits as they wished. Neither corporation engaged in any business activity except that Raymep obtained a loan and as part security for the loan, Raymep assigned to the lender all of its rights, profits, and interest in two leases on the property to which it held title, and it covenanted that they were in full force and effect and it was the sole lessor. The court held, based on those facts, that Westrich should be disregarded for tax purposes because it was "at all times but a passive dummy which did nothing but take and hold the title to the real estate conveyed *450 to it. It served no business purpose in connection with the property." 150 F.2d at 337. The court, however, refused to disregard Raymep as a separate taxable entity because, in securing the loan, it did perform a business function in connection with the property. We think petitioners' reliance on Paymer is misplaced; as we view the facts, limited as they are, we think they are distinguishable. Waterbury was not, by any means, "at all times but a passive dummy." Cf. National Carbide Corp. v. Commissioner,336 U.S. 422, 433-434 (1949), quoted above. As of the time of trial, Waterbury had been in existence for some 30 years. Its 1969 Federal income tax return explicitly states that it engaged in the business of renting real estate, and, on that return, Waterbury reported rental receipts of $3,780. Similarly, on its 1977 return, Waterbury reported rental receipts of $7,800. During the years of its existence, Waterbury had corporate officers, maintained a checking account, and employed accountants to keep financial records and prepare its Federal income tax returns. Petitioners argue that Waterbury served no business purpose other than holding *451 title, at least with respect to the Brinsmade property. The facts, however, indicate otherwise. The closing statement from the 1977 sale of the 186 Brinsmade portion indicates that Waterbury was the seller of the property. Although there are no documents in the record pertaining to the 1975 sale of the 188 Brinsmade portion, the parties stipulated that it was conveyed in 1975 to Michael Sanguiolo. In a question and answer session conducted on October 31, 1978, by Special Agents of the Criminal Investigation Division of the Internal Revenue Service (IRS), the transcript of which was admitted in evidence, Andrew, Delli Paoli's son, admitted that he was present at the closing of the sale of the 186 Brinsmade portion as Waterbury's president and at trial, he admitted that he signed the deed of sale. Thus, we find that Waterbury was the seller of that portion of the Brinsmade property as well. Although Delli Paoli both continued to collect rent from the tenants at the Brinsmade property and received the proceeds from the sales of the property in his personal capacity, we do not think those facts are conclusive to a determination that Waterbury was a mere dummy which should be disregarded *452 for tax purposes.By transferring title of the Brinsmade property to Waterbury, Delli Paoli gained what he perceived to be a business advantage, i.e., avoidance of the claims of a potential creditor. The transfer, thus, served a business purpose for him. After the transfer, Waterbury, at least with respect to the sales of the property, was the seller and, thus, acted as the true owner of the property. The business advantage gained, the business purpose served, coupled with Waterbury's later sales activity with respect to the property is sufficient, in our view, to satisfy the separate entity test set forth in Moline Properties and quoted above. [4] Based on that test, we conclude that Waterbury should be respected for tax purposes. [5]
*453 2. Constructive Dividend for 1975
Having decided that Waterbury is taxable on the 1975 sale of the 188 Brinsmade portion to Michael Sanguiolo, Delli Paoli's son-in-law, we next turn to respondent's determination that this sale resulted in a constructive dividend to Delli Paoli in the amount of $12,000 in that when Waterbury sold the property to Sanguiolo, it reduced the selling price by $12,000 in repayment of a loan in that amount which Sanguiolo had made to Delli Paoli. It is well settled that when a corporation satisfies the obligation of its shareholder or makes a payment for his benefit, such payment may result in a constructive dividend to that shareholder. Yelencsics v. Commissioner,74 T.C. 1513, 1529 (1980); Smith v. Commissioner,70 T.C. 651, 668 (1978). Petitioners, who have the burden of proof on this issue, Welch v. Helvering,290 U.S. 111 (1933), presented no evidence to shed any light on the facts concerning either the alleged loan from Sanguiolo to Dellui Paoli, or Waterbury's sale of the 188 Brinsmade portion *454 to Sanguiolo. [6] Their only argument with respect to this issue appears to be their contention that at the time of the transfer of the Brinsmade property to Waterbury and at the time of the subsequent sales, Delli Paoli was not a Waterbury shareholder, and, therefore, he could not have received a constructive dividend as a result of the 1975 sale. In support of this contention, petitioners presented the testimony of Andrew, Delli Paoli's son, who was Waterbury's president at the time of the property transfer and subsequent sales. Andrew testified that, in May 1975, he, along with his mother, Josephine Delli Paoli, and his sister, Roseann Casale, became the only stockholders of Waterbury. Until May 1975, his father, Delli Paoli, owned all of Waterbury's stock. Andrew further testified that there was no change in Waterbury stock ownership from May 1975 to October *455 1978. To corroborate Andrew's testimony, petitioners placed in evidence a photocopy of a handwritten affidavit, purportedly submitted to a bank in connection with a mortgage application by Delli Paoli, signed by Delli Paoli, his wife, Josephine, and Andrew as president of Waterbury which states that as of the date it was executed, May 22, 1975, Andrew, Josephine Delli Paoli, and Roseann Casale "are all the shareholders" of Waterbury. In addition to Andrew's testimony and the supporting affidavit, Delli Paoli testified that he transferred his shares in Waterbury in connection with his transfer of the property as part of his plan to shield his interest in the property from his creditors and although he did not remember the exact date of transfer, he did state that he owned no shares in Waterbury. Petitioners produced no other evidence on this issue, claiming that the stock records were lost. We are simply not convincted that Delli Paoli was not the sole stockholder of Waterbury and in complete control of the corporation both at the time of the transfer of the Brinsmade property to Waterbury and at the time of the sale of the 188 Brinsmade portion to Sanguiolo in 1975.Neither Andrew *456 nor Delli Paoli were credible witnesses at trial; both of them, when asked about Waterbury's stockownership, gave vague, evasive, and inconclusive answers. For example, when asked how many Waterbury shares he owned, Andrew stated that he did not know. Indeed, during the question and answer session referred to above conducted on October 31, 1978, by Special Agents from the IRS Criminal Investigation Division, Andrew stated that he did not own any Waterbury stock. [7] As for Delli Paoli, the following statement made at trial contradicts his assertion that he turned over control of Waterbury to his son, Andrew, in 1975, and indicates to us that it was he who was in control of Waterbury: Q. How many shares of Waterbury were there outstanding? How many shares were there? Were there 100; were there 10? A. There wasn't any. They--this was a family affair. I used to tell them verbally to my children that what they got, what they haven't got, and it was just--a family conversation, but actually business wise I was the one that was doing everything. * * * [Emphasis added.] *457 Petitioners, of course, have the burden of proof on this issue. Given Delli Paoli's admission at trial that he controlled Waterbury's operation combined with the statement in Waterbury's 1969 Federal income tax return that Delli Paoli owned 100 percent of its stock, we are satisfied that Delli Paoli was in sole control of Waterbury at the time of the 1975 sale and, absent any evidence from petitioners concerning the alleged loan and bargain sale, we sustain respondent's determination that the sale resulted in a constructive dividend to Delli Paoli. [8]
3. Omitted Rental Income
In Waterbury's notice of deficiency, respondent determined that Waterbury failed to report the following rental income for 1975: Source
Amount
186 Brinsmade portion
$1,890.00
188 Brinsmade portion
1,330.00
3153 Waterbury Avenue
6,000.00
$9,220.00
The only evidence presented by petitioners, *458 who, again have the burden of proof on this issue, was Delli Paoli's testimony that after the transfer of the Brinsmade property to Waterbury, he continued personally to collect rent from the Brinsmade tenants, rather than require them to pay rent to Waterbury. In the record are photocopies of checks written to Delli Paoli after the transfer from June through December 1975 by Brinsmade tenants Anthony and Marie DiGennaro in the amount of $1,665 and by Louis and Elizabeth Solimano in the amount of $802.35. Petitioners presented no evidence concerning either the number of tenants living at the Brinsmade property during 1975, or the total amount of rent collected by Delli Paoli from the Brinsmade tenants after the transfer. Petitioners also produced no evidence concerning the amount of rent collected by Waterbury during 1975 from tenants at 3153 Waterbury Avenue. We have concluded above that Waterbury is a separate entity which should be respected for tax purposes, and that, for 1975, it is taxable on the gain from the sale of the 188 Brinsmade portion. Consistent with such conclusion is the further determination that Waterbury is taxable on the rental income derived from the property *459 as well. The mere fact that Delli Paoli may have collected and retained the rent payments from the Brinsmade tenants does not relieve Waterbury from tax liability for the rental income. Due to petitioners' failure to convince us that Waterbury did not receive at least the amount of rental income from the sources determined by respondent, we sustain respondent's determination in this regard. [9]
4. Disallowed Deductions
Waterbury's notice of deficiency reflects respondent's disallowance of the following expenses deducted by Waterbury for 1977: Expense
Amount
Depreciation
$ 580.00
Real estate tax
1,403.14
Water charges
$ 331.33
Petitioners produced no evidence whatsoever at trial concerning these alleged expenses; we, thus, sustain respondent's determination that such expenses are not deductible for 1977 due to petitioners' failure to meet their burden of proof on this issue. 5. Additions to Tax
A. Section 6651(a)
Respondent determined, for 1975, that both Delli Paoli and Waterbury failed *460 to file Federal income tax returns and, therefore, respondent determined an addition to tax under section 6651(a). The parties have stipulated that, indeed, neither Delli Paoli nor Waterbury filed a return for 1975. The burden is on petitioners to establish the existence of reasonable cause for their failure to file returns. Richardson v. Commissioner,72 T.C. 818, 827 (1979); Hatfield v. Commissioner,68 T.C. 895, 898 (1977). Concerning the failure of both Delli Paoli and Waterbury to file returns for 1975, Andrew testified that his father's accountant advised him that Delli Paoli did not have to file an individual return for that year because he was "a retired man," and a return for Waterbury need not be filed because it was always controlled by Delli Paoli and there was no income for that year. Significantly, the accountant was not called as a witness, and Delli Paoli himself did not testify at trial concerning his reasons for failing to file a return for 1975. We do not think, based on Andrew's testimony alone, that petitioners have shown reasonable *461 cause for failing to file returns for 1975. As our discussion in Part 2 of this opinion indicates, we do not find Andrew's trial testimony credible as a whole.We are even less inclined to credit his testimony on this issue given the fact that Delli Paoli, who testified at trial as to other matters, failed to testify concerning his failure to file a return. Further, we find it hard to believe that an accountant would have given such advice in the face of the substantial gains realized by Delli Paoli and Waterbury on the sales in 1975 of the Miami rental property and the 188 Brinsmade Avenue property. Thus, we sustain respondent's determination for 1975. As to 1977, respondent determined that Waterbury failed to file a return and determined an addition to tax under section 6651(a) for that yeat as well. Waterbury did file a return for 1977, which was dated November 30, 1978, and marked received by the IRS on December 8, 1978. Attached to the return is a Form 7004, Application for Automatic Extension of Time to File Corporation Income Tax Return, dated March 8, 1978, requesting an automatic extension of time to file until June 15, 1978, and a Form 7005, Application for Additional *462 Extension of Time to File Corporation Income Tax Return, dated September 11, 1978, requesting an extension of time to file until December 15, 1978. There is no indication on the Form 7005 that the IRS ever acted on or granted Waterbury's application. Petitioners presented no further evidence on this issue. Under section 6072(b), returns of a corporation made on the basis of the calendar year must be filed on or before March 15 following the close of the calendar year. The Form 7005 dated September 11, 1978, indicates that Waterbury is a calendar year taxpayer. Considering the extra time to file granted by an automatic extension, Waterbury's 1977 return was due on or before June 15, 1978. There is nothing in the record to suggest that the filing deadline was further extended by the IRS. Waterbury's return, filed as it was no earlier than November 30, 1978, was, therefore, not timely. Petitioners have produced no evidence concerning the cause for the delay; thus we sustain the addition for 1977. Saigh v. Commissioner,36 T.C. 395, 430 (1961). B. Section 6653(a)
*463 Respondent determined that the underpayments in tax for 1975 by both Delli Paoli and Waterbury were due to their negligence or intentional disregard of rules and regulations. We agree. We have determined above that both Delli Paoli and Waterbury realized substantial gains on the sale of real property and that Waterbury failed to report rental income which it had reported in the past. In spite of these gains, neither Delli Paoli nor Waterbury filed an income tax return for 1975, although both had done so in the past. We think the failure to report the large gains may be characterized, at the very least, as negligence. Indeed, having heard the evasive testimony of both Delli Paoli and his son, Andrew, and having considered the fact that Delli Paoli made a false statement on a mortgage application concerning litigation in which he was involved, we do not find it difficult to conclude that he, and Waterbury, the corporation he controlled, failed to report income, thereby underpaying their tax, in intentional, if not reckless, disregard of the tax law. Thus, we sustain the additions for 1975. As for 1977, respondent determined an addition to tax under section 6653(a) with respect *464 to Waterbury. Again, we have concluded above that Waterbury realized a substantial gain in 1977 on the sale of the 186 Brinsmade Avenue property, yet this gain too was never reported on any return, even though Waterbury did ultimately file a return for 1977. As was the case for 1975, we think the gain was omitted intentionally. Petitioners have not proven otherwise. In fact, with respect to 1977, they have produced no evidence concerning the omission. Thus, we sustain respondent's determination. Enoch v. Commissioner,57 T.C. 781, 802 (1972). C. Section 6654
Respondent determined additions to tax for the underpayment of estimated tax under section 6654 for 1975 with respect to both Delli Paoli and Waterbury. The addition to tax under section 6654, subject to specific limited exceptions not applicable here, is mandatory and extenuating circumstances, had they been shown, are irrelevant. Estate of Roe v. Commissioner,36 T.C. 939, 952 (1961); Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). Accordingly, we sustain this addition to tax with respect to both petitioners. To reflect the foregoing, Decisions *465 will be entered for the respondent.
Footnotes
1. At trial, petitioner Robert Delli Paoli conceded respondent's determination that he failed to report, for 1975, a gain in the amount of $20,863.60 (resulting in an unreported capital gain of $10,431.80 after the 50-percent deduction under sec. 1202, I.R.C. 1954↩) from the sale of rental property in Miami, Florida. 2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.All Rules references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted.↩
3. On the mortgage loan application, signed by Delli Paoli with the representation that the information therein was "in all respects true, correct and complete," Delli Paoli answered "no" to the following questions: (1) "Do you have any litigation or judgments pending?" and (2) "Have you ever had any suits or judgment?"↩
4. In Strong v. Commissioner,66 T.C. 12, 24 (1976), affd. 553 F.2d 94 (2d Cir 1977), this Court stated: "The degree of corporate purpose and activity requiring recognition of the corporation as a separate entity is extremely low." See also Hospital Corp. of America v. Commissioner,81 T.C. 520, 579-580↩ (1983). 5. Petitioners, on brief, state in passing, citing no authority, that Waterbury acted as Delli Paoli's agent. This Court has held, in strictly circumscribed circumstances, that a corporation may serve as a nontaxable agent. See Ourisman v. Commissioner,82 T.C. 171 (1984); Roccaforte v. Commissioner,77 T.C. 263 (1981), revd. 708 F.2d 986 (5th Cir. 1983). Our holdings in Ourisman and Roccaforte were based on an application of the facts in those cases to the following indicia of an agency relationship set forth by the Supreme Court in National Carbide Corp. v. Commissioner,336 U.S. 422, 437 (1949): Whether the corporation operates in the name and for the account of the principal, binds the principal by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal are some of the relevant considerations in determining whether a true agency exists. If the corporation is a true agent, its relations with its principal must not be dependent upon the fact that it is owned by the principal, if such is the case. Its business purpose must be the carrying on of the normal duties of an agent. * * *[Fn. ref. omitted.] Petitioners, who have the burden of proof on this issue, Welch v. Helvering,290 U.S. 111↩ (1933), Rule 142(a), have failed to demonstrate that the alleged agency relationship between Waterbury and Delli Paoli satisfies a sufficient number of the factors quoted above on which to base a finding concerning the existence of a bona fide agency relationship. Thus, we reject their bald assertion.
6. Sanguiolo was present at trial and although sequestered from the courtroom, he was not called by petitioners as a witness. Their failure to call Sanguiolo was not explained. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947).
7. Andrew's credibility is further undermined by his assertion at trial that Waterbury had no checking account. At the question and answer session, Andrew stated that one of his functions as Waterbury's president was to sign corporate checks, and Delli Paoli's attorney presented the IRS Special Agents with records of Waterbury's checking account at the Chase Manhattan Bank.↩
8. Our conclusions in Parts 1 and 2, above, holding Waterbury taxable on the 1975 sale of the 188 Brinsmade portion and Delli Paoli taxable on a constructive dividend as a result of the sale, render moot respondent's motion for leave to file amendment to answer, filed Aug. 7, 1984.↩
9. We note that on its 1977 Federal income tax return, Waterbury reported rental income, after the sale of the Brinsmade property, of $7,800.↩